UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

STACEY CARTER                                   CIVIL ACTION NO. 13-cv-2113

VERSUS                                          JUDGE STAGG

ELDORADO CASINO, ET AL                          MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

Stacey Carter ("Plaintiff"), who is self-represented, alleged in his original and amended complaints (Docs. 1 and 10) that he was subjected to excessive force and false arrest by off-duty Shreveport police officers who were working a security detail at the Eldorado Casino. Plaintiff admits that he and his fiancee were arguing in the lobby of the casino at 1:30 a.m. when Shreveport police Officer K. P. Anderson and other officers approached them and asked for identification. Plaintiff alleges that Anderson told Plaintiff that Anderson had been the lead detective on the investigation of a 2001 incident where Plaintiff was shot, and Plaintiff and his wife had not cooperated with Anderson in the investigation. Plaintiff alleges that Anderson then said, "You are going to jail," and slammed Plaintiff to the floor, injuring Plaintiff's face. Plaintiff pleaded guilty to a charge of disturbing the peace, and the prosecutor dismissed a charge of resisting arrest.

Plaintiff complains about the actions of Anderson, alleges that Police Chief Willie Shaw failed to properly supervise his officers, that Officer P. W. Robinson and other officers

who were nearby failed to prevent the use of excessive force, and that Eldorado Casino is liable for employing the officers and failing to properly supervise them. Plaintiff filed a motion for summary judgment (Doc. 74), after which motions for summary judgment were also filed by Eldorado Casino (Doc. 95) and the City of Shreveport, Chief Willie Shaw, Officer K.P. Anderson and Officer Paul Robinson (Doc. 97). For the reasons that follow, it is recommended that Plaintiff's motion be denied and that the defendants' motions be granted.

**Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A fact is "material" if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Anderson, supra; Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine dispute of a material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

**Summary Judgment Evidence**

**A. Officer Paul Robinson's Affidavit**

Paul Robinson testifies by affidavit that he was performing off-duty employment at the casino, wearing his Shreveport police uniform, at the time of the incident. Robinson and the assistant manager of the casino were coming down the escalator from the second floor to the first when Robinson saw a beverage glass fly across the first floor. He then saw Sgt. Kevin (K. P.) Anderson, who was also working off-duty at the casino, standing between a couple. Anderson told Robinson that he saw the male, Plaintiff, commit a battery on the female, Latrinia Shelton. Anderson asked Robinson to detain Plaintiff while he interviewed Ms. Shelton about the battery.

Robinson testifies that he noted a strong odor of alcohol coming from Plaintiff, who became argumentative and belligerent after giving Robinson his identification. Plaintiff asked Robinson to arrest him and take him to jail, but Robinson said he was just detaining Plaintiff at that point. Plaintiff then made a fist and said in a loud voice, "I'll give you a reason to arrest me." Plaintiff then said, "fuck it," and began to walk away from Robinson. Robinson then told Plaintiff that he was under arrest and attempted to grab Plaintiff's arm to make the arrest. Plaintiff jerked his arm away. Robinson then used a modified seatbelt takedown to establish control over Plaintiff and bring him to the ground, where he was handcuffed.

Robinson testifies that he then helped the handcuffed Plaintiff to his feet, but Plaintiff began to try to walk away and fell to the ground. Robinson testifies that he, with the aid of

an off-duty state trooper, helped Plaintiff stand up, and they escorted Plaintiff to the security room where Plaintiff was advised of his Miranda rights.

Robinson testifies that Plaintiff complained that his hip was "messed up." When Robinson asked why, Plaintiff said that he had been shot in a 2001 incident. As Plaintiff described the details of the shooting, Robinson remembered it and told Plaintiff that he had been involved in the investigation. Plaintiff then complained that Robinson was mad at him because Plaintiff did not cooperate during the 2001 investigation. Robinson denied that, especially since the shooter had killed himself at the scene. Robinson states that he had arrested Plaintiff for resisting an officer and disturbing the peace before he even realized the two men had been involved in the 2001 incident.

Plaintiff stated during the interview that he had been drinking most of the day, and he complained that his leg was bothering him. The officers requested EMS to examine Plaintiff, but Plaintiff refused any treatment. Robinson does not recall Plaintiff complaining about his face hurting. Robinson released Plaintiff to an on-duty police officer who took Plaintiff to the city jail for processing.

### B. Officer K. P. Anderson's Affidavit

Officer K. P. Anderson testifies by affidavit that he was on the first floor of the casino when he heard glass break and turned to witness a black male push a black female as they yelled at each other. The female struck the male with her hand across his face. Anderson approached the couple to investigate, separated them, and asked Robinson to assist him by detaining Plaintiff while Anderson interviewed the woman.

The woman, Latrinia Shelton, told Anderson that the couple was arguing over another woman. She said that she did not want to press charges. During this interview, Anderson could hear Plaintiff being verbally resistive to Robinson. As Anderson went to tell Robinson that Ms. Shelton did not wish to press charges, he saw Robinson in the process of arresting Plaintiff. Anderson corroborates Robinson's testimony that Robinson helped Plaintiff to his feet, after which Plaintiff began to walk away and then fell to the ground.

Anderson also recalls hearing Plaintiff and Robinson discussing the shooting investigation. Anderson describes the conversation as cordial, and he did not hear Robinson tell Plaintiff that Plaintiff had not cooperated in the investigation or that he was being arrested because of a lack of cooperation. Anderson does not recall Plaintiff complaining about his face hurting.

### C. Testimony About Ms. Shelton's Arrest

While the officers were in the security room interviewing Plaintiff, Ms. Shelton knocked on the door. Robinson told her that the management of the casino did not want her on the premises and that she needed to leave. Shelton refused to leave, and Anderson left the room to talk with her. Anderson testifies that he showed Shelton where the taxis were located, but she still refused to leave. Anderson told her two more times that she needed to leave, but she refused. He then told her that she was under arrest for entering and remaining. She was handcuffed and escorted to the security room. Shelton is not a party to this case.

### D. Jailer Joseph McCray's Affidavit

Joseph McCray is a jailer at the Shreveport city jail. He testifies by affidavit that he was on duty when Plaintiff was brought to the jail. Part of the booking process involves a medical screening. Plaintiff advised which medications he took, said he needed a total hip replacement, and complained that his right cheek felt like it was broken. Plaintiff denied that needed medical attention.

McCray testifies that Plaintiff was nonetheless taken to LSU hospital for evaluation in accordance with department policy that applies when a booked inmate complains of a condition involving the head or face. Plaintiff was returned to the jail the same day. Medical records indicate that Plaintiff had an "appreciably swollen right face," and indicated difficulty opening his mouth or smiling/biting down. It appears that he was given a pressure dressing to use for 24 hours, prescribed Keflex (an antibiotic), and directed to take over-the-counter medication for pain.

### E. Court Records

Plaintiff's criminal charges were handled in the Shreveport City Court. A transcript indicates that after Plaintiff had been in jail for 45 days he pleaded guilty to disturbing the peace, and the prosecution dismissed the resisting arrest charge. Plaintiff was sentenced to time served.

### F. Plaintiff's Declaration; Video

Plaintiff's evidence consists of his declaration that appears to comply with 28 U.S.C. § 1746 so that it may serve as competent summary judgment evidence. Plaintiff states under

penalty of perjury that he was "seized then arrested by K. P. Anderson with excessive force." He states that he "did not resist arrest to cause the force that was excessive," "was no threat to the officer's or others' safety," and that he "did not attempt to evade arrest by flight."

Plaintiff testifies that officer Anderson is the "caucasian officer" who was with him in the room writing the arrest report, while Paul Robinson was outside arresting Ms. Shelton. Plaintiff states that Paul Robinson is "the African-American officer." He states that Anderson "retaliated against my wife and I when the (2001) charges were dismissed by taking confidential crime scene photos to her employer to try and get her nursing license revoked in New Orleans, Louisiana in 2002."

The two officers respond that Plaintiff is confused about their identity. Paul Robinson testifies that he is caucasian and attaches a photograph of himself as evidence. K. P. Anderson testifies that he is an African-American, and he also submits a photograph to support that testimony. Security video from the casino supports the officers' testimony that it was the caucasian Robinson who dealt directly with Plaintiff and arrested him. The video also generally corroborates the version of events described by the officers.

The officers also contend that Plaintiff is confused about which of them was involved in the earlier shooting allegation. Plaintiff states that it was Anderson, but Robinson testifies that he was the one who was involved in that investigation. He adds that the State Board of Nursing subpoenaed him to testify at a hearing for Plaintiff's wife, and Robinson did testify and provide documents regarding the shooting incident that involved the wife. Anderson testifies that, contrary to Plaintiff's claim, he was not involved in the prior investigation.

**Claim Against Eldorado Casino**

Plaintiff alleges that Eldorado Casino is liable because it had a contract with the off-duty officers to provide security and did not properly supervise them. Plaintiff asserts his claim under 42 U.S.C. § 1983, which subjects to liability a person who, under color of state law, causes a citizen the deprivation of constitutional rights. Eldorado argues that it did not act under color of state law so is not subject to liability under the statute.

Private entities such as the casino do not ordinarily act under color of law, but they may do so if they perform functions that are traditionally left to the state. Rosborough v. Management & Training Corp., 350 F.3d 459, 460 (5th Cir. 2003) (private prison-management corporation). Generally, when a private entity hires a police officer to provide security at its place of business, the private company will not be subject to liability under Section 1983 unless the officer has failed to perform an independent investigation. Morris v. Dillard Department Stores, Inc., 277 F.3d 743, 750 (5th Cir. 2001). In other words, the business will not be liable unless the officer's actions are based entirely on information provided by the business. Id. at 749. Evidence of whether the officer performed an independent investigation can include whether the officer interviewed witnesses, independently observed the event, and wrote his own report after the incident. Id. at 750.

The evidence in this case shows that the officers saw or heard the disturbance between Plaintiff and his girlfriend, and they investigated the incident based on their own observations. They did not act based solely on information provided by the casino. Accordingly, the casino did not act under color of law and cannot be liable under Section

1983. See Butler v. City of Shreveport, 2014 WL 1689934 (W.D. La. 2014) (Sam's Town Casino did not act under color of law when off-duty Shreveport police officers arrested a patron based on the officers' observations).

Plaintiff argued in opposition to Eldorado's motion that the officers were acting under a contract with the casino, the contract had been withheld during discovery, and the contract somehow subjected the casino to liability. Eldorado stated in its reply that the contract was produced to Plaintiff. The existence of the contract can not render Eldorado a state actor, and Plaintiff has not demonstrated how the contract could otherwise subject the casino to Section 1983 liability. Eldorado is entitled to summary judgment dismissing it from this case.

**Claims Against the Police Officers**

Plaintiff alleges that the officers are liable for false arrest and excessive force. The officers contest the claims on the merits and raise qualified immunity as a defense. When a party moves for summary judgment and in good faith pleads entitlement to qualified immunity, the burden shifts to the plaintiff to rebut the defense. Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2012).

To prevail on a Section 1983 false arrest claim, Plaintiff must show that the arresting officer did not have probable cause to make the arrest. Haggerty v. Texas Southern University, 391 F.3d 653, 655 (5th Cir. 2004). "Probable cause for a warrantless arrest exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had

committed or was committing an offense." U.S. v. Watson, 273 F.3d 599, 602 (5th Cir. 2001).

If there was probable cause for any charge on which the arrest was made, then the arrest was supported by probable cause, and the claim for false arrest fails. Wells v. Bonner, 45 F.3d 90, 95 (5th Cir.1995); Winston v. City of Shreveport, 390 Fed. Appx. 379, 384 (5th Cir. 2010). An officer who reasonably but mistakenly concludes that probable cause is present is entitled to qualified immunity. Mendenhall v. Riser, 213 F.3d 226, 230 (5th Cir. 2000).

As for an excessive force claim, an arrestee's claim is governed by the Fourth Amendment, and the question is whether the officer's actions are "objectively reasonable" in light of the facts and circumstances. Graham v. Connor, 109 S.Ct. 1865 (1989). Factors to consider include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 109 S.Ct. at 1872. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Id. A plaintiff may overcome a qualified immunity defense by showing "(1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." Ontiveros v. City of Rosenberg, 564 F.3d 379, 382 (5th Cir. 2009).

The police officers have given detailed affidavits, which are largely supported by a surveillance video taken from various points of view within the casino. The video shows Plaintiff and Ms. Shelton engaging in a physical altercation, after which the nearby officers rushed to the scene. It also shows Plaintiff being handcuffed and apparently attempting to walk away from the officer, only to fall on his face. There is no indication on the video to support the claim that any officer slammed Plaintiff to the floor or otherwise did anything to cause Plaintiff to fall. The specific summary judgment evidence from the officers shows that they observed facts and circumstances sufficient for a reasonable person to conclude that Plaintiff had disturbed the peace, to which he pleaded guilty, and resisted arrest by twice attempting to evade Officer Robinson.

Plaintiff attempts to obtain summary judgment in his favor, and defeat summary judgment requested by the officers, through his conclusory declaration that he "did not resist arrest" and "did not attempt to evade arrest by flight." He does not offer testimony that he did not engage in what would amount to disturbing the peace, to which he pleaded guilty, and he admits in his pleadings that he and his fiancee were arguing in the lobby.

To withstand a motion for summary judgment, a plaintiff must show that there is a genuine issue for trial by presenting evidence of *specific* facts. "Conclusory allegations and unsubstantiated assertions will not satisfy the plaintiff's burden." Bellard v. Gautreaux, 675 F.3d 454, 460 (5th Cir. 2012). See also Young v. Equifax Credit Information Services, Inc., 294 F.3d 631, 639 (5th Cir. 2002) ("[c]onclusory affidavits are not sufficient to defeat a motion for summary judgment") and Bridgmon v. Array Systems Corp., 325 F.3d 572, 577

(5th Cir. 2003) (party could not defeat summary judgment with only his "uncorroborated and conclusory testimony"). Defendants have offered specific, detailed testimony about the events that evening, and it is corroborated by surveillance video. Plaintiff has responded with nothing more than conclusory declarations that are insufficient to create a genuine dispute of material fact. Both officers are entitled to summary judgment on the merits of the excessive force and false arrest claims without the need to rely on qualified immunity.[1]

**Other Claims**

Plaintiff contends that Officer Anderson retaliated against Plaintiff and his wife by presenting information to her employer in 2002. The evidence indicates that it was actually Officer Robinson who was involved in that matter. In any event, the period of limitation to file a Section 1983 claim is one year. Elzy v. Roberson, 868 F.2d 793, 794 (5th Cir. 1989). This claim was, therefore, long since time barred when Plaintiff filed his complaint in 2013.

Plaintiff asserts claims against the City of Shreveport and Chief Willie Shaw for failure to adequately train and supervise, but supervisory or municipal liability may attach under Section 1983 only if there is an underlying constitutional violation by one of the officers. Rios v. City of Del Rio, Tx, 444 F.3d 417, 425-26 (5th Cir. 2006). Summary

---

[1] The false arrest claim is also subject to challenge under Heck v. Humphrey, 114 S.Ct. 2364 (1994), which held that, in order to recover damages for an allegedly unconstitutional conviction, or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a prisoner must show that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 114 S.Ct. at 2372. Plaintiff has not shown that his guilty plea conviction for disturbing the peace has been overturned.

judgment is recommended on all underlying claims for failure to establish a constitutional violation, so any supervisor or municipal liability claims should also be dismissed.

Accordingly,

**IT IS RECOMMENDED** that Plaintiff's **Motion for Summary Judgment (Doc. 74)** be **denied**, and the **Motions for Summary Judgment (Docs. 95 and 97)** filed by Eldorado Casino and the City of Shreveport, Chief Willie Shaw, Officer K. P. Anderson and Officer Paul Robinson be **granted**, and that all claims against all Defendants be **dismissed with prejudice**.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 21st day of January, 2015.

                                                    Mark L. Hornsby
                                                    U.S. Magistrate Judge